UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:09-CV-47-R

MURRAY-CALLOWAY COUNTY PUBLIC
HOSPITAL CORPORATION                                                                    PLAINTIFF

v.

SAMUEL E. SPREHE, M.D.                                                                  DEFENDANT/
                                                                                  THIRD-PARTY PLAINTIFF

v.

JON O'SHAUGHNESSY;
CHERYL COORS, individually; and
COORS EXECUTIVE RESOURCES, LTD          THIRD-PARTY DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Renewed Motion for Summary Judgment by Third-Party Defendants Cheryl Coors and Coors Executive Resources, LTD. Docket Number ("DN") 59. The Defendant/Third-Party Plaintiff has responded. DN 61. The Third-Party Defendants have replied. DN 62. Fully briefed, this matter is now ripe for adjudication. For the following reasons, the Third-Party Defendants' motion is GRANTED.

BACKGROUND

The impetus underlying this case is a contractual dispute between the Plaintiff, Murray-Calloway Public Hospital Corporation ("MCCH" or "hospital"), and the Defendant, Dr. Samuel E. Sprehe ("Sprehe"). Sprehe is an ear, nose, and throat ("ENT") doctor who was recruited by MCCH to practice medicine in Murray, Kentucky. In 2004, MCCH hired Cheryl Coors and Coors Executive Resources, LTD (collectively "Coors") to recruit an ENT doctor for an opening at the hospital. Coors successfully recruited Sprehe, and in January of 2005, he signed a contract and agreed to opened an ENT practice at MCCH. Sprehe's time at the hospital was short-lived,

1

however, and he left the practice after approximately one year. MCCH then sued Sprehe to recover money advanced under the terms of their contract. In response to the lawsuit, Sprehe filed a counter-claim against MCCH and a third-party claim against Coors and MCCH's former CEO, Jon O'Shaugnessy. Sprehe's sole cause of action in the third-party complaint is fraudulent misrepresentation. He alleges that Coors made multiple fraudulent statements about the potential for an ENT practice at MCCH and that he relied on those statements to his financial detriment.

The fraudulent misrepresentations alleged by Sprehe can be divided into two broad categories. First, in the "market" category, Sprehe alleges that Coors misrepresented the potential level of patient volumes and the absence of competition for an ENT practice in Murray, Kentucky. Specifically, Sprehe claims that Coors told him that Murray and the surrounding communities were in "desperate" need of a local ENT practice, that there was a "bonanza" of potential patients, and that there were no other ENT doctors in the relevant market area. Additionally, Sprehe alleges that Coors misrepresented the research she had done to substantiate her claims about Murray's ENT market. Second, in the "finance" category, Sprehe claims that Coors told him that MCCH was going to "bankroll" his practice by providing an office, staff, and all of the necessary equipment to have a successful ENT practice.

In all, Sprehe claims that he relied on these fraudulent misrepresentations to his financial detriment and that Coors is liable for those losses.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

If, under the substantive law at issue in a case, "the nonmoving party faces a heightened burden of proof, such as clear and convincing evidence, he must show in opposition to the motion for summary judgment that he can produced evidence which, if believed, will meet the higher standard." *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 944 (6th Cir. 1990) (citing *Street*, 886 F.2d at 1479).

Finally, while Kentucky law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Federal Rule of Civil Procedure 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

**DISCUSSION**

Sprehe seeks to recover against Coors for fraudulent misrepresentations that allegedly caused him to suffer pecuniary losses. Coors has moved for summary judgment, claiming that Sprehe cannot establish the elements of fraudulent misrepresentation by clear and convincing evidence.

### I.     The substantive law of fraudulent misrepresentation.

The tort of fraudulent misrepresentation is well-settled in Kentucky. In order to establish the *prima facie* case of fraudulent misrepresentation, a plaintiff must show that the defendant: (1) made a material representation; (2) which was false; (3) which the defendant knew to be false or made with reckless disregard of its truthfulness; (4) which was intended to cause the plaintiff to act; (5) which the plaintiff acted in reliance upon; and (6) which caused the plaintiff to suffer an injury. *Crescent Grocery Co. v. Vick*, 240 S.W. 388, 389 (Ky. 1922); *see* Restatement (Second) of Torts § 525 (1977). Each of these elements must be established by clear and convincing evidence. *Investors Heritage Life Ins. Co. v. Colson*, 717 S.W.2d 840, 842 (Ky. App. 1986); *see Sanford Constr. Co. v. H & S Contractors*, 443 S.W.2d 227, 235 (Ky. 1969) ("Our rule is that '[the] burden is on the party asserting fraud to establish it by clear and convincing proof.'") (citations omitted)). And, as stated above, the party opposing a motion for summary judgment on a claim of fraud must put forth evidence which will meet the clear and convincing standard. *White v. Turfway Park Racing Ass'n*, 909 F.2d at 944.

If the plaintiff fails to show any one of the elements of fraudulent misrepresentation by clear and convincing evidence, then the claim must fail as a matter of law. As said in detail by the *Crescent Grocery* Court:

> Although the alleged representation was made by defendant, if it was not material, or was not false, or defendant did not know it was false, and did not make it

> recklessly in disregard of the truth, or did not make the representation intending that plaintiff should be induced to act upon it; or, if plaintiff was not induced to and did not act upon the representation, or if he did so without injury or loss resulting to him, no cause of action exists in favor of the plaintiff.

*Crescent Grocery Co.*, 240 S.W. at 389.  In the present case, Coors argues that summary judgment is appropriate because Sprehe cannot prove the elements of fraudulent misrepresentation by clear and convincing evidence.

> **II.     The claim of fraudulent misrepresentation fails for the "market" category of statements.**

Sprehe alleges that Coors fraudulently misrepresented the viability of the market for an ENT practice in Murray, Kentucky.  In his response to the motion for summary judgment, Sphere identifies general statements made by Coors that he allegedly relied upon when deciding to open an ENT practice at MCCH.  First, Coors told him that there were no ENT doctors employed in the Murray area at the time of his recruitment and that there would be no competition for such services.  Sprehe Depo., DN 59-4, pp. 154:4-6, 154:24.  Second, Coors stated that the hospital was in "desperate" need of an ENT doctor and that she had done research to substantiate this claim.  *Id.* at 154:9-10; Coors Depo., DN 59-5, p. 91:11-14.  Third, Coors represented that Murray and the surrounding community were a "wide-open" opportunity for an ENT practice with a "bonanza" of potential patients.  Sprehe Depo., DN 59-4, p. 154:14-16.

None of the statements identified by Sprehe show that Coors fraudulently misrepresented the market for an ENT practice in Murray.  First, regarding the level of ENT competition in the area, evidence shows that Sprehe did not rely on Coors's representation that there were no other ENT doctors in Murray.  In fact, Sprehe's own testimony shows that he knew Coors's representations on this issue were incorrect and that another ENT doctor, Dr. Klapper, practiced in Murray.  Sprehe's testimony on this issue is as follows:

5

> Q [Counsel for MCCH]: Okay. But do you have any information that suggests that when Ms. Coors told you that Dr. Klapper was retired, that she knew otherwise?
>
> A [Sprehe]: No
>
> Q: Do you have any evidence that that was a misstatement on her part?
>
> A: No, I don't have evidence of that.
>
> Q: And you, at least later, on your own found out that he was not?
>
> A: That's correct.
>
> Q: And had the ability to investigate his status through any number of other sources, correct?
>
> A: That's right.
>
> Q. When you made your decision to ultimately come to Murray, would it be fair to say that you did not rely upon Ms. Coors' [sic] statement concerning Dr. Klapper's status of retired or retiring?
>
> A: No, because I had subsequently had plenty of opportunity to determine what was going on with Dr. Klapper, and her statement did not affect the final judgment, the final decision.
>
> Q: Okay. So you did not rely upon that statement from her?
>
> A: No.

*Id.* at p. 174:7-175:6. Under the fifth element of the *prima facie* case of fraudulent misrepresentation a plaintiff must establish that he relied on the misrepresentation made by the defendant. *See Crescent Grocery Co.*, 240 S.W. at 389. Sprehe's deposition testimony unequivocally shows that he did not rely on Coors's representations about the competition his ENT practice might face in Murray. As such, this portion of his fraudulent misrepresentation claim is without merit.

Second, Sprehe has not shown that Coors knew her statements about the "desperate" need for an ENT doctor in Murray were false or that she made them with reckless disregard of their

6

truthfulness. Sprehe testified that Coors told him that the area was in "desperate" need of an ENT doctor because "patients were driving as much as 60 to 70 miles out of the area to go to Paducah or perhaps some other centers to see an ENT." Sprehe Depo., DN 59-4, p. 199:8-11. When questioned further about this statement Sprehe admitted that Coors made no specific representations about the number of potential patients leaving Murray for treatment elsewhere and that Coors gave him "her reassurances from the CEO that it was a critical number . . . ." *Id.* at p. 199:15-17. Coors's own testimony shows that her "market-need information" came solely from Jon O'Shaughnessy, MCCH's former CEO. Coors Depo., DN 59-5, p. 86:2-24. Even if the "market-need information" that Coors gave to Sprehe was false, Sprehe has failed to present any evidence that Coors knew such statements were false or that she acted in reckless disregard of their truthfulness. Additionally, Sprehe has presented no evidence that Coors should not have relied on the "market-need information" given to her by MCCH's CEO. Accordingly, any statements by Coors about MCCH's "desperate" need for an ENT doctor and the research underlying that claim are not actionable as fraudulent misrepresentation because Sprehe has failed to put forth clear and convincing evidence that Coors knew such statements were false or acted in reckless disregard of their truthfulness.

Finally, Coors's statement that Murray was a "wide-open" opportunity for an ENT doctor with a "bonanza" of potential patients is not actionable as fraudulent misrepresentation because such statements were merely expressions of opinion as to future events. "For a declarant's misrepresentation to be used as the basis for fraud, it must relate to an existing or past fact. If the alleged misrepresentation related to a future promise or an opinion of a future event, then it is not actionable." *Radioshack Corp. v. Comsmart, Inc.*, 222 S.W.3d 256, 262 (Ky. App. 2007) (citations omitted). "[A]bsent misrepresentation of objective data, 'forward-looking

7

recommendations and opinions are not actionable . . . merely because they are misguided, imprudent, or overly optimistic." *Flegles, Inc. v. Truserv Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (quoting *In re Salomon Analyst AT&T Litigation*, 350 F. Supp. 2d 455, 467 (S.D.N.Y. 2004)).

Evidence shows that Sprehe told Coors that he saw 35-40 patients per day and performed 7-10 surgeries per week in his prior ENT practice. Sprehe Depo., DN 59-4, p. 164:16-18; 165-14-16. Coors allegedly told him that he would have no trouble maintaining and even exceeding that level of ENT practice in Murray. *Id.* at p. 165:16-21. Any statements by Coors's regarding the weekly volume of patients Sprehe would treat or the amount of money he would make as an ENT doctor in Murray are opinions as to future events, did not misrepresent objective data, and simply are not actionable under the tort of fraudulent misrepresentation.

### III. The claim of fraudulent misrepresentation fails for the "finance" category of statements.

Sprehe alleges that Coors fraudulently misrepresented the manner in which MCCH was planning to finance his ENT practice in Murray. Specifically, Sprehe alleges that Coors told him that:

> [T]he hospital is going to completely bankroll this whole event, including providing office, staff, all equipment. They had nothing, and they basically needed someone with my credentials to come over there, hire the staff, train them, and start practicing, and they would provide everything else, and there would be no competition.

Sprehe Depo. DN 59-4, p. 154:17-24. Sprehe's response brief contains one muted reference to Coors's representations regarding MCCH's plans to finance his ENT practice, and he has presented no evidence that would allow the Court to determine whether Coors's "financing" statements were fraudulent misrepresentations. Sphere fails to provide any evidence that such statements were false, or that Coors knew they were false or made them with reckless disregard

of their truthfulness. Absent proof of these critical elements, the claim fails as a matter of law. Furthermore, such statements appear to be expressions as to future events, which are not actionable under the tort of fraudulent misrepresentation. *See Radioshack Corp.*, 222 S.W.3d at 262. Sprehe bears the burden of showing by clear and convincing evidence that Coors's statements regarding the financing of his ENT practice were fraudulent misrepresentations, and he has fallen woefully short of this standard for this category of statements.

## CONCLUSION

Third-Party Defendants Cheryl Coors and Coors Executive Resources, LTD, moved for summary judgment asserting that Defendant/Third-Party Plaintiff Samuel E. Sprehe could not demonstrate that certain statements by Coors were fraudulent misrepresentations. For all of the foregoing reasons Coors's motion is GRANTED.